MODESTA CONCEPCIÓN COSME, ETC., Plaintiff and Appellant, v. DEMETRIO LATONI PECUNIA, Defendant and Appellee.

No. 7143.   Argued April 1, 1937.—Decided May 26, 1937.

A. *Casanova Prats* for appellants. *Dubón & Ochoteco* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Modesta Concepción Cosme, mother with *patria potestas* over her minor acknowledged natural children Alberto, Joaquín, and Carmen Padín Concepción, born out of a love affair between her and Joaquín Padín Martínez, brought suit against Demetrio Latoni Pecunia, requesting the annulment of a mortgage foreclosure proceeding brought by the latter against said minors.

The fundamental facts of this case may be summarized as follows:

Don Joaquín Padín Martínez died April 30, 1929, leaving a will in which he appointed and designated as his sole and universal heirs his minor children, plaintiffs herein, in equal shares. Among the properties left by the deceased were two houses situated in the city of San Juan. On the death of the testator, each of said houses was subject to a mortgage constituted by the testator in favor of Mrs. Encarnación Aboy, widow of Cintrón, to secure a loan of $4,000, interest at the rate of 12 per cent per annum and an additional credit to cover expenses in case of foreclosure.

The will of Don Joaquín Padín Martínez contained a clause whereby the testator appointed Don Manuel García Lago tutor of the plaintiff minors.

The mortgage credit of Mrs. Aboy, widow of Cintrón, having matured, and the plaintiff minors not having the necessary sum of money to avoid foreclosure, on December 24, 1930, Don Manuel García Lago, in his capacity as testamentary tutor and administration of the estate of the three minor plaintiffs, brought before the District Court of San Juan case No. 13,745, *in re* judicial authorization, wherein he alleged the existence and maturity of the aforesaid mortgage credits, the demand for payment made by the mortgagee, the lack of funds with which to pay the amount owed, and the peril of losing the properties if the mortgagee brought suit, and requested permission to mortgage them to the defendant Latoni for the sum of $8,500, with interest at 12 per cent per annum, for a term of three years, and to invest said sum in the payment and cancellation of the two mortgages mentioned and in the expenses to which this new transaction might give rise.

The authorization requested having been granted, the said testamentary tutor, on December 30, 1930, executed a voluntary mortgage in favor of the defendant to secure to the latter the principal of the loan, interest, and an additional credit of $800. From the sum borrowed, $8,330.35 was applied by the testamentary tutor to the payment of the mortgages and to cover the expenses and disbursements caused by the cancellation of the said encumbrances and by the execution and recording of the new mortgage in favor of the defendant. The balance, amounting to $169.75, was deposited in the office of the clerk of the district court.

The plaintiff minors having failed to pay interest corresponding to six months and amounting to $510, the creditor Demetrio Latoni filed on May 18, 1932, a complaint for the foreclosure of the mortgage, wherein he requested that payment be demanded from the then tutor of the minors, Don

Francisco Font Manzano, as well as from the minors personally, as the latter were over fourteen years of age. Demand having been made in the form indicated, and other legal steps having been followed, the two mortgaged properties were sold at public auction and awarded to the creditor Latoni for the sum of $9,010, leaving uncovered $850 for costs and attorneys' fees.

The complaint brought on behalf of the minors alleges three causes of action. The first is based on the alleged nullity of the appointment of the testamentary tutor, made in favor of Manuel García Lago by the testator, father of the minors, while the natural mother of said minors was alive and had consequently the *patria potestas* over them, and on the supposed nullity of the mortgage constituted by said tutor in favor of the defendant. The second cause of action is based on the alleged nullity of the appointment of Francisco Font Manzano as tutor, made by the district court, when Manuel García Lago resigned his appointment as testamentary tutor, because the tutorship of said minors corresponded to their natural mother Modesta Concepción Cosme; on the nullity of the demand for payment made on a tutor unlawfully appointed; and on the lack of a demand on the mother of the minors. It is alleged in the third cause of action that the defendant is unlawfully and in bad faith in possession of the two properties; that these properties have produced to the defendant monthly rents of $119 and $140, respectively, since the date the defendant took possession of them.

Plaintiffs pray that judgment be rendered declaring null and void (*a*) the appointment of the testamentary tutor; (*b*) the mortgage executed by said testamentary tutor in favor of the defendant; (*c*) the mortgage foreclosure proceeding brought by the defendant against the plaintiff minors and the sale made by the marshal in favor of the defendant as well as the record thereof in the registry. They further request that the defendant be adjudged to pay to the plaintiffs the sum

of $4,134 which the minors have failed to receive as rent, as well as the rents produced by the properties up to the termination of the suit, plus the costs, disbursements, and attorney's fees.

After denying specifically the essential averments of the complaint, the defendant alleged on the contrary facts which we summarize as follows:

1. That Modesta Concepción Cosme has at no time exercised the *patria potestas* over the plaintiff minors, because she was deprived of this right by a provision of the will left by the predecessor in interest of said minors, which provision has not been impeached by the plaintiff, in spite of the fact that she had knowledge of the same.

2. That Manuel García Lago was appointed judicial administrator of the minors, with the express consent of their mother Modesta Concepción Cosme, as the same appears in a stipulation of June 29, 1929, signed by the attorneys for Manuel García Lago and Modesta Concepción Cosme, and by virtue of which the judicial administration of the properties and the appointment of the administrator were decreed.

3. That the defendant did not receive the sums alleged by the plaintiffs, or any other sum, as rents of the two houses, and that on the contrary he had to spend $2,500 in repairing the properties to make them fit to live in.

In his cross complaint the defendant requested the dismissal of the complaint and, if the latter can not be sustained, that the plaintiffs be adjudged to pay to the defendant $9,010 as the amount of the credit and accrued interest, plus $850 for costs and attorneys fees, $661.22 paid by the defendant as taxes owed on the two properties and $2,500 for the repairs made on both properties, or a total of $13,021.22, plus the costs, disbursements and attorney's fees of the present action.

After the case was tried, the district court rendered judgment dismissing the first and third causes of action and sustaining the second cause of action of the complaint; sustaining the cross complaint and adjudging the plaintiff minors and cross-defendants to pay to the defendant and cross-com-

plainant the sum of $8,500, amount of the loan, plus $510 as interest accrued to the month of April 1932, plus $661.22 for taxes and $2,500, value of the repairs, or a total of $12,171.22, without special pronouncement of costs. The said judgment also provides that the credit for said sum represents a preferential lien over the two properties, each property to answer for half of that amount. The plaintiffs have taken the present appeal, based on a bill of exceptions and a statement of facts and on the errors assigned in their brief.

The legal questions involved in the first six assignments as well as in the tenth and thirteenth may be stated as follows:

1. Could the testator validly appoint a tutor for his natural recognized minor children while the natural mother of said minors was still living?

2. Assuming that the appointment of such tutor under the above circumstances were null, has the contract executed for the benefit of the minors, been revalidated by the acts of the natural mother subsequent to the death of the ancestor and after she had knowledge of such appointment, as well as by the orders entered by the district court for the protection of the interests of the minors?

The will of the testator was expressed in the following words:

"Making use of the right granted to me by law I hereby select and appoint as tutor of the minors Joaquín, Carmen, and Alberto, my friend Manuel García Lago, of legal age, single, merchant, and resident of this city, relieving him from the giving of a bond and granting him whatever authority may be necessary in law; and although by operation of law the natural mother of the minors, the aforesaid Modesta Concepción Cosme, has the *patria potestas* over them, in defense of the welfare and education of my children, I have deemed it convenient to make the appointment of tutor just made, for the reason that the said mother has not lived with the children for a long time and has abandoned them and because she is a very ignorant woman, and if she were allowed to assume the administration of the properties that I am leaving to my children, the latter will be subject to all sorts of deprivations and to witness improper acts."

The truth of the reasons alleged by the testator to justify the appointment of the tutor was established by the declaraion of the plaintiff herself at the trial, where she stated that she had separated from her lover Joaquín Padín Martínez because they could not get along; that the children of Padín stayed with him; that six months after she left Padín she began to live with another man, from whom she had several children, the first of which was born in 1920.

It does not appear from the record that prior to the commencement of the present suit plaintiff had impeached the appointment of tutor made by the testator. On the contrary, the court below held that the following facts had been proved and were uncontroverted:

1. That on June 5, 1929, Manuel García Lago, executor and tutor of the minors, requested the judicial administration of the estate of the testator (case No. 9699); that Modesta Concepción Cosme by her attorney Enrique Lefebre entered into a stipulation whereby she consented to the judicial administration and to the appointment of Manuel García Lago as administrator "by reason of the intimate knowledge that he has of the affairs of the estate, and for the sake of the latter she withdraws her opposition to his appointment as permanent administrator, thus stipulating his appointment with the other party"; that by virtue of this stipulation the court decreed the judicial administration and appointed Manuel García Lago as administrator; that he gave a bond, took the oath of office, and qualified therefor.

2. That on December 24, 1930, Manuel García Lago, the then tutor and administrator of the properties of the minors, instituted proceedings, No. 13,745, before the District Court of San Juan, for judicial authorization to borrow some money from the defendant Latoni with the object of paying the mortgages due and to prevent the mortgaged properties from going into the hands of the widow of Cintrón; that the court granted the authorization on December 29, 1930, and that on the 30th of the same month the mortgage whose nullity is sought was constituted and the credits above mentioned were paid and canceled.

3. That Manuel García Lago having resigned the offices of tutor and judicial administrator, the District Court of San Juan, on June 30, 1931, at the request of the minor Joaquín Padín, appointed Fran-

cisco Font Manzano as tutor and administrator of the properties of the minors.

Based on those facts the district court held that, although at the death of the natural father and by operation of law (section 152 of the Civil Code, 1930 edition), the mother acquired the *patria potestas* over the minors, the testator could appoint a tutor to administer the properties which said minors would inherit under said will, especially since the minors in the present case were forced heirs only as to one-third of the estate and voluntary heirs, or legatees, as to the remaining two-thirds. And interpreting the will of the testator, as expressed by the testamentary provision above mentioned, the trial court held that the appointment of Manuel García Lago as tutor of the minors was confined to the administration of the properties, and that the right of *patria potestas* had suffered no prejudice thereby. In accordance with this construction, the court held that the mortgage executed in favor of the defendant was valid but its foreclosure null, inasmuch as demand had not been made on the mother of the minors, who had the right of *patria potestas* over them.

It is unquestionable that on the death of the father the *patria potestas* over the natural children recognized by both parents corresponded to the natural mother, in conformity with section 154 of the Civil Code (1930 ed.); that the administration of the properties of said minors corresponded also to the mother, as provided by section 158 of the same code, and that in accordance with the general provisions on the subject of tutorship (Title IX, Chapter I, section 167 of the Civil Code), the object of guardianship is the custody of the person and property, or the property only of those persons who, not being subject to *patria potestas*, are incapable of managing their own affairs.

The Civil Code (1930 ed.) grants to the parents who have instituted a minor child or an incapacitated person of full age as their heir, the power to appoint to him a tutor by will, by providing:

"Section 174. The father or the mother may appoint a tutor in his will for his minor children and those of age who are incapacitated."

Section 206 of the Spanish Civil Code, which is the equivalent of section 174, *supra,* reads as follows:

"The father may appoint a guardian and a protutor for his minor children or for those of age who are incapacitated, whether they be legitimate or acknowledged natural children, or for any of his illegitimate children whom he is obliged to support, according to article 139.

"The mother has similar powers, but if she has contracted a second marriage, the appointment by her of a guardian for the children of her first marriage shall not be effective without the approval of the family council.

"In any case it shall be necessary that the person appointed guardian or protutor be not subject to the authority of any other person."

As may be seen, the section of the Spanish Civil Code is of a much wider scope than that which is now in force in Puerto Rico. Commenting on this section, Scaevola says:

"It is well to notice that the right to appoint a tutor by will for the children equally corresponds to both spouses, always respecting the preference that by nature and by law is enjoyed by the male of the family. But does this mean that, in case the father, let us say, at his death and in his will, should appoint a tutor for his children in the event of the demise of the mother before their children become of age, the mother would be incapacitated to avail herself of the statutory powers arising from the *patria potestas?* In our opinion, no. One thing is the authority enjoyed by the father while he administers and manages the conjugal partnership and quite a different thing is the *patria potestas* of the mother, which can not be absorbed by the authority of the husband; thus we believe that the Civil Code, under section 206, in granting to the parents the power to appoint for their children a tutor by will, limits said authority to the surviving spouse; for otherwise, instead of the harmony and equality of rights there would be a hideous privilege.

"This is, on the other hand, the manifest tendency of European codes. Let us take as an example section 242 of the Italian Civil Code, which reads as follows: 'The right to appoint as tutor a rel-

ative or a strange person corresponds to the surviving father or mother.'

"A similar principle is derived from section 193 of the Portuguese Civil Code, which admits that only in case of the incapacity or impossibility of the father may the mother appoint a tutor by will. .

"Finally, the above is ratified by section 397 of the French Civil Code, which prescribes that 'the right to appoint as tutor a relative or a strange person corresponds to the surviving spouse.' If these words are not a literal transcription of the above article, they express with enough clearness its meaning.

"On the other hand, this is also the opinion of the commentators. Laurent, in dealing with the subject of testamentary tutors, says: 'The law grants this right to the surviving spouse, father or mother. Hence, it follows that the first who dies may not appoint a testamentary tutor. As a matter of law, tutorship belongs to the surviving spouse, and neither the father nor the mother may deprive the other spouse from the tutorship.' This is evident. While both spouses are alive, they both enjoy within the family, authority over the children; when one of them passes away, then all that authority is vested in the surviving spouse, whether it be the husband or the wife, as fortunately and redeeming our honored traditions, we have conferred on the latter the right corresponding to her. Would it not be equivalent to depriving her of the same, were we to segregate it, one of the most noble privileges, from the *patria potestas?*

"A subdivision of the section with which we are dealing sustains our conclusion. It reads thus: 'In any case it shall be necessary that the person appointed guardian or protutor be not subject to the authority of any other person.' And this paragraph, which in view of its ambiguous wording does not seem to be applicable to the case we are discussing, has nevertheless an extraordinary application thereto. Upon a cursory reading of it, many will undoubtedly believe, and not without reason, that this provision refers to tutors and protutors, whereas it only refers directly to persons who by reason of their minority or incapacity are subject to tutorship. That it does not refer to the former is shown by the fact that it is a subdivision of section 206, which article is dedicated exclusively to the determination of the authority of the parents and to the condition of the children subjected to it. And besides it would be a useless repetition of the phraseology of section 199 in close harmony with subdivision 1 of section 237 of the Civil Code.

"The subdivision which we have been discussing means that when the father or mother make use of their right ·to appoint a tutor by will for their children it should be understood that if upon the death of the former the latter survives, or vice versa, if upon the death of the latter the former survives, the appointment is void, for the child is subjected to the *patria potestas* of the surviving spouse, which rejects in an absolute manner the existence of the tutorship, not only because one whose father or mother is living should not have a tutor, but also because such right pertains to the spouse having the *patria potestas.*" Scaevola, vol. 4, pages 180–181.

It should be noted that section 242 of the Italian Civil Code and section 397 of the French Civil Code prescribe that the right of selecting a relative or a strange person as tutor corresponds to the surviving spouse. The Portuguese Code also specifies in a clear manner when the mother may appoint a tutor by will. In the section of the Spanish Civil Code the word surviving does not appear. Scaevola adds this word because he believes, in construing section 206, that this was the intention of the legislator. It should also be noted that the Spanish commentator lays great emphasis on the last subdivision of said section, where it is said that in any case it shall be necessary that the person appointed guardian or protutor be not subject to the authority of any other person. This last provision is not in force in Puerto Rico. It was suppressed when section 174 of our Civil Code, which grants the father and the mother the general power of appointing a tutor by will for their minor children or for incapacitated persons of full age, was approved. There are, however, other provisions of the code that must be construed in harmony with this section in order to establish a correct conclusion.

The *patria potestas* over the legitimate children not emancipated belongs in the first place to the father, and in case of his absence, legal incapacity, or death, to the mother. Illegitimate children and adopted minors shall be under the authority of the father or mother acknowledging or adopting them. Where they have been acknowledged or adopted by both parents, the *patria potestas* belongs in the first place to

the father, and in case of his absence, legal incapacity, or death, to the mother. Section 152, Civil Code (1930 ed.).

Section 154 provides that the administration of the property of children under the *patria potestas* belongs in the first place to the father, and in case of his absence, legal incapacity, or death, to the mother.

Section 167 provides that the object of tutorship is the custody of the person and property, or the property only, of those who, not being subject to *patria potestas,* are incapable of managing their own affairs.

The lower court held that the testamentary provision with regard to the appointment of the tutor was valid, as it was of the opinion that the testator could establish conditions and appoint an administrator for the properties, in so far as the two-thirds of free disposal were concerned, especially if the mother was not living with the children.

May the father or mother, under section 174 of the Civil Code, deprive the other spouse by will of the right of *patria potestas?* We think not. If we considered section 174 of the Civil Code alone, we would perhaps be compelled to answer this question in the affirmative, but as there are other provisions of the code that clearly establish the authority of the surviving spouse over the children and their property, we do not think that the intention of the legislator was to authorize one of the spouses to deprive the other of the rights inherent in the *patria potestas.*

In conformity with the above legal provisions and comments, we must hold that the appointment of Manuel García Lago as tutor of the plaintiff minors was null and void, and that upon the death of the testator the surviving mother acquired, by operation of law, the *patria potestas* over her minor children and the right to administer their property.

■■ The appointment of Manuel García Lago as executor has not been impeached by the plaintiffs. It appears from the record that this gentleman accepted the appointment of

executor and that he obtained from the District Court of San Juan the letters testamentary required by law. It was in compliance with his duty as such executor, as there were minor heirs and debts to be paid, that Manuel García Lago asked for the judicial administration of the properties belonging to said minors. See *Carbia* v. *Carbia,* 10 P.R.R. 376, and sections 556 and 558 of the Code of Civil Procedure (1933 ed.). The natural mother of the minors, who had the *patria potestas* and, as a right inherent therein, the administration of the properties of the children, expressly acquiesced in the appointment made by the court in favor of Manuel García Lago, because she deemed it beneficial to the interest of the minors by reason of the intimate knowledge that he had of the properties of the estate. The stipulation signed by her attorney presented to court as showing the consent of the natural mother has not been impeached by her in any way. It is true that the plaintiff objected during the trial to the admission in evidence of the aforesaid stipulation, but the lower court acted properly in admitting it to show the consent of the natural mother to the appointment of a judicial administrator, especially as she did not impeach the authority of her counsel to sign the same in her name and she only objected to its admission, without adducing any reasons or grounds in support of its alleged inadmissibility.

We must hold that, as she consented to the appointment of a judicial administrator of the properties of her minor children, and as she induced the defendant to contract with said administrator the mortgage loan that the district court considered to be useful and necessary to prevent the foreclosure of the two properties for the recovery of two credits constituted thereon by the testator in favor of the widow of Cintrón, the plaintiff, as natural mother of the plaintiff minors, accepted the validity of the order entered by the District Court of San Juan in suit No. 13,745, for judicial authorization, which authorized Manuel García Lago to contract said

loan with the defendant. We agree with the court below that the judicial administration, the appointment of Manuel García Lago, and the judicial authorization granted to the latter to contract said loan were ratified by the voluntary act of the natural mother of the plaintiffs, and hence that the mortgage in favor of the defendant was legally constituted.

Appellants urge that, when the mortgage encumbrance in favor of the defendant was constituted, Manuel García Lago acted as tutor and not as administrator of the properties of the minors, inasmuch as he had resigned the office of administrator prior to the date of the execution of the mortgage deed. The mortgage deed executed in favor of the defendant does not appear in the documentary evidence introduced by the plaintiff. As the appellants have not placed us in such a situation that we might be able to determine the capacity under which Manuel García Lago was acting in executing the mortgage deed of December 30, 1930, the documentary evidence presented by the defendant tending to show that said gentleman had been expressly authorized to execute said deed by the district court, by order of December 24 of the same year, and as it was not alleged or shown that such authorization had been revoked or limited in any manner, we must presume that when Manuel García Lago executed said deed he was acting in accordance with and within the scope of the authorization granted to him by the district court, in order to contract a loan which said court considered as useful and necessary for the protection of the interests of the minors.

The minor appellants admit that the execution of the loan for $8,500 obtained from the defendant was beneficial to their interests, because with those funds they could free the two houses from the foreclosure proceeding that the former mortgagee was attempting to bring; and they admit the obligation they have of refunding the principal of the loan to the defendant. They maintain, however, that said obligation should be limited to the sum of $8,000, which was the amount

spent in the cancellation of the former mortgages, and that they should not be compelled to refund the amount of the expenses incurred in the cancellation of said encumbrances and in the constitution and recording of the mortgage in favor of the defendant; and that they should not be compelled, either, to pay interest at the stipulated rate of 12 per cent per annum, but only at the legal rate of 6 per cent per annum.

The judgment of the court below, in our opinion, is in accord with the soundest principles of equity.

To decree the annulment of the claim of the defendant, by imposing on the latter the loss of the capital which he lent, and which was used in paying debts owed by the plaintiffs and in safeguarding their properties that were threatened with foreclosure, would be equivalent to allowing the unjust enrichment of the plaintiffs at the expense of a person who helped them in good faith, based on the legality and sufficiency of the judicial authorization of the district court. This has been so admitted by counsel for the plaintiffs when he says that his representatives acknowledge that they are bound to refund the $8,000 paid to the widow of Cintrón. Why should not they be equally bound to refund the amount of the expenses incurred in the cancellation of the preceding encumbrances and in the constitution of the new lien and to pay interest at the stipulated rate? We see no reason for establishing the difference alleged by the appellants and are of the opinion that the lower court did not err in adjudging them to repay the total amount of the credit plus interest at the agreed rate and previously approved by the same court.

■■ The seventh, eighth, and ninth assignments may be dealt with as if they were a single assignment. The plaintiffs allege that the defendant was in possession of the properties unlawfully and in bad faith and that the properties ''have produced to the defendant monthly rents amounting to $119 and $140, respectively, since the date the defendant

took possession of them." The defendant denied these averments in the following manner:

"The defendant denies that said properties have produced him monthly rents of the amount of $119 as to the property described under letter 'A' and of $140, as to the property described under letter 'B', or any other sum."

He alleged besides that he had to repair the two houses at a cost of $2,500 in order to put them in a condition to be rented.

The controversy or issue with regard to the amount of the rent was definitely raised by the pleadings of both parties. The answer of the defendant on this point does not imply an admission, because the defendant denied having received the amount specified in the complaint or any other amount. The court did not err in holding that a negative pregnant was not involved.

It is true that the plaintiffs were bound to prove their affirmative averment with regard to the amounts actually received by the defendant as rent. But it is also true that the defendant, as possessor of the properties, was in a better position than the plaintiffs to know what the properties produced during the time that he was in possession. Being in a position to assist in clearing up the truth, by appearing before the court and testifying on the facts, he preferred not to do so. We have examined the evidence offered to prove this point and consider it insufficient. It referred to what the properties rented up to the month of March 1929, to plaintiffs' father, and not to the rents actually produced or that should have been produced to the defendant during the time that he was in possession. The lower court did not have before it the necessary elements to be in a position to fix the amount of the claim. See *Morales* v. *Landráu,* 15 P.R.R. 761; *Román* v. *Rivera,* 43 P.R.R. 512, and *Pontón* v. *Succrs. of Huertas,* 46 P.R.R. 763.

Considering it our duty to do justice to the litigants, establish their respective rights and not allow the unjust enrichment of a party at the expense of the other, and not being satisfied that the defendant did not receive any amount as rent of the two properties during the time that he was in possession of them, we are of opinion that the judgment of the court below should be set aside in so far as it overruled the claim for the rents received by the defendants, those which the plaintiffs failed or might have failed to receive, and that the case should be remanded to the court below with instructions to reopen it on these points, by commanding the defendant to file an account showing the amounts that he has really received as rent and giving an opportunity to the plaintiffs to produce whatever evidence they might have to rebut that offered by the defendant.

■ The court below did not commit the eleventh error assigned. The minor plaintiffs, as owners of the mortgaged properties, were bound to pay the taxes assessed on said immovables during the time that the defendant was in possession. That obligation was an inevitable consequence of the annulment of the mortgage proceeding brought by the defendant.

■ The court below did not err either in sentencing the plaintiffs and cross-defendants to refund to the defendant the sum of $2,500 claimed by the latter as repairs made by him on the two houses. Even if we considered that the defendant herein was a possessor in bad faith, he would nevertheless be entitled to claim the expenses incurred by him in preserving the houses. We have already seen that the plaintiffs failed to prove that the defendant received any amount as rent during the time he was in possession. The defendant proved that the properties were left in very bad condition and in a ruinous state by reason of the cyclone of San Ciprián; that the repairs were necessary for the conservation of the properties and in order to be able to rent them, and

that the total cost of said repairs was $2,694.24. See *Román* v. *Rivera, supra.*

An examination of the evidence adduced by both parties does not show the manifest error in weighing the evidence imputed to the trial court. The evidence is amply sufficient to support the conclusions of law on which the judgment is based. And we find no basis for the averment that the court below abused its discretion in refusing to sentence the defendant to pay the costs and attorney's fees.

For the above-stated reasons the judgment appealed from is hereby modified so as to set aside that part thereof that dismisses the claim of the plaintiffs for the amounts of the rents received by the defendant and those which plaintiffs might have received, and the case is remanded to the court below with instructions to reopen it for the production of evidence with regard to the claim on the rents; to compel the defendant to render an account of the rents really received by him from the date of the filing of the complaint and during all the time of his possession, and to give an opportunity to the plaintiff to present the evidence that may be pertinent to show the value of the fruits that might have been received and were not received by reason of the blame, carelessness, or neglect of the defendant. And, thus modified, the judgment appealed from is affirmed.

Mr. Justice Hutchison dissented as to the remand of the case, because he considered that there was a sufficient basis in the evidence for rendering a final (*definitiva*) judgment on the question of the loss of rents.